UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CLIFTON C. ODIE, | 4:20-CV-04039-KES |
| Movant, | |
| vs. | REPORT AND RECOMMENDATION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## INTRODUCTION

This matter is before the court on the *pro se* motion by Clifton Odie, a federal prisoner, seeking to vacate, set aside or modify his sentence pursuant to 28 U.S.C. § 2255.  <u>See</u> Docket No. 1.[1]  Now pending is a motion to dismiss Mr. Odie's motion without holding an evidentiary hearing filed by respondent the United States ("government") pursuant to Fed. R. Civ. P. 12(b)(6).  <u>See</u> Docket No. 13.  Mr. Odie opposes the motion.  <u>See</u> Docket No. 16.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

---

[1] The court refers to documents filed in Mr. Odie's § 2255 civil case by citing to the docket number of those documents.  The court refers to documents in Mr. Odie's underlying criminal case, <u>United States v. Odie</u>, 4:17-cr-40016 (D.S.D.), by inserting the abbreviation "CR" before citation to the docket number of the document.

## FACTS

The court takes judicial notice of Mr. Odie's underlying criminal case to provide the following factual background relevant to the single claim raised by Mr. Odie.  Mr. Odie was indicted on February 7, 2017, and charged with conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. CR Docket No. 1.  A writ was issued to obtain Mr. Odie from the custody of the Minnehaha County Sheriff where he was then being held.  See CR Docket No. 11.  Mr. Odie made his initial appearance in federal court on February 21, 2017, at which counsel was appointed to represent him and a not guilty plea was entered.  CR Docket Nos. 17 & 19.

On September 26, 2017, Mr. Odie filed a written a plea agreement with the court.  CR Docket No. 91.  Under the terms of the plea agreement, Mr. Odie agreed to plead guilty to the charge in the indictment.  Id. at p. 2, ¶ C.  In return, the government agreed to recommend Mr. Odie receive 3 points downward adjustment to his base offense level under the United States Sentencing Guidelines ("USSG") for timely acceptance of responsibility for his offense.  Id. at pp. 3-4, ¶¶ E & F.

The plea agreement set forth the statutory punishment for the offense to which Mr. Odie would plead guilty:  10 years' mandatory minimum term of imprisonment; up to a maximum of life imprisonment; and a fine of $8 million. Id. at p. 2, ¶ C.  The plea agreement further explained that this mandatory minimum and maximum sentence were the result of a prior drug conviction Mr. Odie had in the state of Illinois, on the basis of which the government

would file an information pursuant to 21 U.S.C. § 851(a).  Id. at p. 6, ¶ J.

Under the terms of the plea agreement, Mr. Odie agreed this prior crime was a

felony and agreed that he would not contest the fact of the previous conviction

nor the enhanced penalty that resulted from this conviction.  Id.

The government filed its § 851(a) information on the same day a change

of plea hearing was held--October 4, 2017.  CR Docket No. 181.  At the

hearing, Mr. Odie entered a guilty plea to the indictment.  Id. at p. 13.  The

district court began a line of questioning regarding the conviction contained in

the government's § 851(a) information, but ultimately, no questions regarding

that information were asked by the court of Mr. Odie.  Id. at p. 14.  Counsel for

Mr. Odie indicated that Mr. Odie did not specifically remember that conviction.

Id.  Counsel explained that the government had asked the DEA agents to

obtain the documentation regarding the conviction and provide it to Mr. Odie.

The court asked, "he's not ready to admit today, and we can wait until before

sentencing?"  Id.  Counsel responded, "yes."  Id.  Accordingly, the court asked

Mr. Odie no questions about the § 851(a) information or the conviction upon

which that information was based.  The factual basis statement did not

mention the conviction.  See CR Docket No. 92.

After Mr. Odie pleaded guilty, a presentence report ("PSR") was prepared

for sentencing purposes.  CR Docket No. 148.  The PSR reported that Mr. Odie

had been convicted at a court trial in Cook County, Illinois, of possession of a

controlled substance on November 18, 2000. [2]  Id. at p. 12, ¶ 50.  Mr. Odie was represented by counsel on this prior state charge.  Id.  He was sentenced to 3 years' imprisonment for this crime.  Id.  He was subsequently paroled and then discharged from parole.  Id.

The PSR calculated Mr. Odie's advisory USSG sentence as follows.  The PSR found a total offense level of 37 after all adjustments.  Id. at pp. 9-10, ¶¶ 29-40.  The PSR calculated 6 criminal history points for Mr. Odie, placing him in criminal history category III.  Id. at p. 14, ¶ 56.  With an offense level of 37 and a criminal history category of III, the PSR calculated Mr. Odie's USSG range to be 262-327 months' imprisonment.  Id. at p. 19, ¶100.  No factors warranting departure from the USSG range were identified in the report.  Id. at p. 21, ¶ 114.

Just before sentencing, Mr. Odie filed a written allocution statement for the court's consideration.  See CR Docket No. 152.  This statement did not reference his 2000 Illinois conviction.  Id.

Mr. Odie was sentenced on January 3, 2018.  See CR Docket No. 179. Defense counsel stated during his argument that Mr. Odie's 2000 conviction involved distribution of a small amount of marijuana.  Id. at p. 22. Government counsel mentioned that Mr. Odie had four prior drug convictions, but did not specify what they were.  Id. at p. 33.  Mr. Odie addressed the court,

---

[2] The plea agreement recited Mr. Odie was convicted in Cook County, Illinois, on November **8**, 2000, of the crime of possession of a controlled substance. See CR Docket No. 91 at p. 6, ¶ J.  Illinois court documents provided by United States Probation, attached hereto, indicate the date was November **8**, not 18.

4

but did not specifically talk about his 2000 drug conviction from Illinois. The court spoke at length, explaining the reasons for its sentence, but the court never asked Mr. Odie whether he admitted the 2000 Illinois conviction.

The court noted that the bottom of Mr. Odie's USSG range was 262 months. Id. at 37. However, the court stated it believed a sentence of 240 months' imprisonment (20 years) was sufficient to serve the goals outlined in 18 U.S.C. § 3553(a). Id. The court sentenced Mr. Odie to 240 months' imprisonment.[3] Id.

The court reminded Mr. Odie that he had waived his right to appeal, but stated that if he believed the court made an error and the issue was preserved for appeal, Mr. Odie could file an appeal and ask another court to review what the district court did. Id. at p. 40. The court told Mr. Odie if he wanted to appeal, he needed to file a notice of appeal with the clerk of court's office within 14 days from the date of his sentencing. Id. Mr. Odie stated he understood. Id.

Mr. Odie filed no direct appeal of his conviction or sentence. On February 27, 2020, more than two years after he had been sentenced, Mr. Odie filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1. In his motion, Mr. Odie raises a single issue: he asserts the 2000 Illinois drug conviction did not qualify as a prior felony drug offense so as to enhance his sentence under 21 U.S.C. § 851(a). Id. at p. 4.

---

[3] One year later that sentence was reduced to 120 months' imprisonment. See CR Docket No. 35.

The government now moves to dismiss Mr. Odie's motion without holding an evidentiary hearing.  <u>See</u> Docket No. 13.  The government argues Mr. Odie's motion is time-barred, having been filed beyond the one-year statute of limitations for § 2255 motions.  <u>See</u> Docket No. 14.  The government also argues Mr. Odie's claim is procedurally defaulted.  <u>Id.</u>  Mr. Odie responds that his claim is timely under 28 U.S.C. § 2255(f)(4).  <u>See</u> Docket No. 16.  He also asserts his claim is not procedurally defaulted or, if it is, he can demonstrate grounds to legally excuse his default.  <u>Id.</u>  Finally, Mr. Odie argues that denial of relief to him under the facts of his case amounts to suspension of the writ of habeas corpus.  <u>Id.</u>

## DISCUSSION

### A.    Standard Applicable to Rule 12(b)(6) Motions

The Federal Rules of Civil Procedure are applicable to § 2255 habeas actions so long as the procedural rules do not conflict with the habeas statutes or the Rules Governing Section 2255 Cases in the United States District Courts ("Governing Rules").  <u>See</u> Governing Rule 12.  Federal Rule of Civil Procedure 12(b)(6) is not inconsistent with the Governing Rules.  <u>Compare</u> Governing Rules 4 & 5 (allowing respondent to respond to petitioner's habeas petition with a motion), <u>with</u> Fed. R. Civ. P. 12(b)(6) (same); <u>see also</u> <u>Ebert v. Clarke</u>, 320 F. Supp. 2d 902, 909-10 (D. Neb. 2004) (holding that Fed. R. Civ. P. 12(b)(6) applies in habeas proceedings under § 2254).

Rule 12(b)(6) allows dismissal of a habeas petition if that petition fails to state a claim upon which relief can be granted on its face.  <u>See</u> Fed. R. Civ. P.

12(b)(6).  The petition must plead "enough facts to state a claim to relief that is *plausible* on its face."  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A habeas petition does not need "detailed factual allegations" to survive a motion to dismiss, but a petitioner must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  There is also a "plausibility standard" which "requires a [petition] with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim.  Id. at 556.  The petitioner's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a petitioner's pleading of a claim by examining his or her petition.  See FED. R. CIV. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the petition alone, however.  Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint

whose authenticity is unquestioned." Id. (citing Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))). Here, the court has taken judicial notice of Mr. Odie's underlying criminal matter and the documents contained therein. Dittmer Properties, L.P., 708 F.3d at 1021; FED. R. EVID. 201(b); Rules Governing Habeas Practice, Rule 5.

**B.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343-44 (1974). Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the records in the underlying criminal case were often in a distant location. United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court. Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension. Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see also Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).

## C.   **Statute of Limitations**

Motions under § 2255 are subject to a one-year statute of limitation that runs from the *latest* of four specified dates.  See 28 U.S.C. § 2255(f).  Section 2255(f) reads as follows:

> (f)  A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of–
>
> (1)     the date on which the judgment of conviction becomes final;
>
> (2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The government relies on subsection (f)(1) of § 2255 to argue that Mr. Odie's motion is untimely.  A judgment of conviction becomes final 14 days

after it has been entered if no appeal is taken therefrom.  See Fed. R. App. P. 4(b)(1)(A); United States v. Johnson, 457 U.S. 537, 543, n. 8 (1982), abrogated on other grounds by Griffith v. Kentucky, 479 U.S. 314 (1987); Clay v. United States, 537 U.S. 522, 527 (2003); Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005); Sanchez-Castellano v. United States, 358 F.3d 424, 428 (6th Cir. 2004); Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence becomes final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.").

Thus, if § 2255(f)(1) is the operative provision, Mr. Odie's statute of limitations began to run on January 17, 2018, (14 days after his sentencing), and expired a year later on January 17, 2019.  Thus, the government argues, Mr. Odie's statute of limitations had already expired by over a year when he filed his § 2255 motion in February, 2020.

Mr. Odie asserts that subsection (f)(1) is not the operative provision. Instead, he relies on § 2255(f)(4).  He argues that the facts in support of his claim did not come into existence until the Seventh Circuit decided United States v. De La Torre, 940 F.3d 938 (7th Cir. 2019), on October 10, 2019. Mr. Odie also argues that the Eastern District of Missouri found subsection (f)(4) of § 2255 to be applicable where an offense is reclassified from a felony to a misdemeanor.  See McFarland v. United States, 2016 WL 6600071 (E.D. Mo. Nov. 8, 2016).  Therefore, Mr. Odie asserts his claim is timely under § 2255(f)(4) because he filed his motion within one year of the De La Torre decision.

11

The <u>De La Torre</u> opinion involved appeals by multiple co-conspirators in a methamphetamine distribution organization including Jeffrey Rush and Christian Chapman.  <u>De La Torre</u>, 940 F.3d at 942, 944-45.  Rush and Chapman had entered pleas of guilty to conspiracy to distribute methamphetamine which included admissions of a prior drug conviction from the state of Indiana and Illinois (respectively) which formed the basis of the government's § 851(a) informations against each of them.  <u>Id.</u> at 944.

On appeal, Rush and Chapman argued that each of the prior convictions cited in their respective § 851(a) informations was not a qualifying predicate offense that could be used to enhance their sentences.  <u>Id.</u>  Thus, Rush and Chapman argued, their pleas to the § 851(a) informations were not knowingly and intelligently entered into.  <u>Id.</u>  Although neither defendant had objected before the district court on this issue, the court held their substantial rights were affected and agreed to review the issue.  <u>Id.</u> at 948.

The court began by reviewing the statutory framework for enhancing a sentence due to a prior conviction.  Section 841(b)(1)(A) of Title 21 provided at that time if one is convicted of a drug crime under § 841(a), and one has previously been convicted of a felony drug offense that has become final, one is subject to an enhanced sentence.  <u>Id.</u> at 948.  The court noted that "felony drug offense" was defined under Title 21 as "an offense that is punishable by imprisonment for more than a year under any law of the United States or of a state . . . that prohibits or restricts conduct relating to narcotic drugs,

12

marihuana, anabolic steroids, or depressant or stimulant substances." Id. (quoting 21 U.S.C. § 802(44)).[4]

In determining whether Rush and Chapman's previous convictions were "felony drug offenses," the Seventh Circuit applied the categorical approach, which required the court "to compare the elements of the state statute of conviction to the elements of the federal recidivism statute." Id. "If, and only if, the elements of the state law mirror or are narrower than the federal statute can the prior conviction qualify as a predicate felony drug offense." Id. The court emphasized the inquiry was into the *elements* of the crime, not the defendant's actual conduct in the underlying previous conviction. Id.

Regarding Chapman's Illinois convictions, he had two prior convictions for felony unlawful possession of controlled substances in violation of 720 ILCS 570/402(c). Id. at 949. Subsection (c) of the Illinois statute was a broad catch-all provision that applied to any controlled or counterfeit substance not specifically set forth in subsections (a) or (d) of the statute. Id. Illinois defined

---

[4] The law has changed since Jeffrey Rush and Christian Chapman were sentenced. Section 841(b)(1)(A) now uses the language "serious drug felony" instead of "felony drug offense" in referring to a prior drug conviction for which enhancement applies. See 21 U.S.C. § 841(b)(1)(A). The term "serious drug felony" is now defined as any prior offense for which the defendant *served* more than a year of imprisonment and for which he was released within the last 15 years before the commencement of the instant offense. See 21 U.S.C. § 802(57) (Congress enacted two subsections numbered "57"—this is the second such subdivision). These changes came about because of the First Step Act which was signed into law on December 21, 2018. The changes regarding sentencing are not retroactive except as to those defendants sentenced for crack cocaine offenses prior to the Fair Sentencing Act of 2010, so the definitions in place at the time of Mr. Odie's sentencing and as discussed in De La Torre are the definitions applicable to him.

"controlled substance" as "a drug, substance, or immediate precursor in the Schedules of Article II of this Act." Id.  The Schedules in turn included propylhexedrine as a Schedule V controlled substance, which was broader than the federal definition of a felony drug offense under § 802(44) because the federal definition did not include propylhexedrine. Id.  Thus, comparing the elements of the federal offense with the elements of the Illinois statute, the state offense was broader and regardless of what Chapman was actually convicted of in state court, because he could have been convicted of possession of propylhexedrine (using the elements of the state offense), and because such possession would not have been a federal crime, the state offense could not constitute a predicate offense for the § 851(a) enhancement. Id.

The court reached the same result in co-defendant Jeffrey Rush's appeal. In that appeal, one basis of the government's § 851(a) information was a 2001 Indiana conviction for dealing in a schedule I, II, or III controlled substance. Id. at 950.  The Indiana law was broader than federal law in three respects: (1) Indiana law included geometric and optical salts of methamphetamine while the federal law was limited to optical salts of meth; (2) Indiana law included parahexyl as a schedule I drug whereas federal law did not include that substance at all; and (3) Indiana law listed a combination product containing tiletamine and zolazepam as a schedule III drug which was not listed under the federal law. Id. at 950-52.  The court reversed as to both Chapman and Rush, holding that the error in both of their plea proceedings implicated each of their

substantial rights and the cases were remanded to the district court for
resentencing. Id. at 953.

Mr. Odie's PSR does not reveal the actual statute citation under which he
was convicted under Illinois law in 2000. See CR Docket No. 148 at p. 12,
¶ 50. It merely states he was convicted of possession of a controlled substance
at a court trial and was sentenced to three years' imprisonment. Id. However,
documents submitted to the United States Probation Officer who wrote
Mr. Odie's PSR show that he was convicted of a violation of 720 ILCS
570/402(c), the same "catch-all" provision of the same statute that Chapman
was convicted of and which the government sought to use in Chapman's
§ 851(a) information. Compare Odie Documents attached hereto at pp. 2 & 3
("court charges/dispositions"), with De La Torre, 940 F.3d at 949-50. Applying
the categorical approach, as did the Seventh Circuit, this court reaches the
same conclusion: the elements of the Illinois statute are broader than the
elements of the federal statute, so Mr. Odie's 2000 Illinois conviction cannot
form the basis of the government's § 851(a) information.

But the government argues the De La Torre decision is not a newly-
discovered fact, so subsection (f)(4) of § 2255 is inapplicable. Instead, the
government argues, the new thing relied upon by Mr. Odie is a legal decision,
so subsection (f)(3) of § 2255 applies to determine if his claim is timely.
Subsection (f)(3) by its very definition applies only to decisions of the United
States Supreme Court, not decisions by lower courts such as the Seventh
Circuit. Because the new decision relied upon by Mr. Odie is a circuit court

15

opinion instead of a Supreme Court opinion, the government argues subsection (f)(3) which is the only applicable statute, is unavailing to Mr. Odie.

Mr. Odie relies on the <u>McFarland</u> decision in support of his assertion that subsection (f)(4) applies and, therefore, his § 2255 motion is timely.  In <u>McFarland</u>, the movant filed a § 2255 motion after more than a year from the time his conviction became final.  <u>McFarland</u>, 2016 WL 6600071 at *1.  He, too, sought to assert that the California conviction which had formed the basis of a § 851(a) information in his case was not a valid conviction for purposes of enhancing his sentence.  <u>Id.</u>  The government argued McFarland's motion was untimely, but the court held McFarland's decision was timely, applying subsection (f)(4) of § 2255.  <u>Id.</u> at *3.

The underlying facts in McFarland's case were different than Mr. Odie's.  In <u>McFarland</u>, the state of California enacted a law which changed the classification of the law McFarland had been convicted of from a felony to a misdemeanor and provided that persons previously convicted of felonies under the law could seek a "recall of sentence" which, if granted, would retroactively reclassify their convictions to misdemeanors.  <u>Id.</u> at *2.  McFarland asserted he had been granted a recall of his sentence on the convictions which now were classified as misdemeanors.  <u>Id.</u>  Here, instead of Mr. Odie's underlying conviction being reclassified and his conviction remade, the statute under which Mr. Odie was convicted in 2000 in Illinois has been declared categorically insufficient to provide the basis for an § 851(a) information.  The

16

court views this as a distinction without a difference for purposes of analyzing the timeliness of Mr. Odie's motion.

Here, there are serious questions regarding the validity of Mr. Odie's plea with regard to the § 851(a) conviction.  Under the law expressed in De La Torre, his prior Illinois conviction which formed the basis of his § 851(a) information is called into serious question.  But even more than that, through no fault of the court or anyone else, Mr. Odie never admitted the fact of the 2000 Illinois conviction.  The court broached the subject at Mr. Odie's change of plea hearing, but counsel prevented that line of questioning at that time, explaining that neither he nor the government had complete information about that conviction yet.  Counsel explained that documentation regarding Mr. Odie's 2000 Illinois conviction had been requested by the government but not yet received.  Counsel stated when documentation was received, Mr. Odie would be in a position to decide whether to voluntarily, intelligently and knowingly admit that conviction.  The problem is, neither the court, nor counsel for the government or defense, ever revisited this subject again on the record.  Thus, there is a real question as to whether Mr. Odie's plea was intelligently and knowingly made.  No record in the underlying criminal matter reflects that he ever admitted to the 2000 Illinois conviction.

The posture of the government's motion is one of dismissal on the basis of the pleadings alone under FED. R. CIV. P. 12(b)(6).  Given the facts, and the legal authority supplied by Mr. Odie, the court cannot conclude that there is no

possibility he can state a claim.  The court cannot conclude that his claim is untimely as a matter of law based on the pleadings.

Furthermore, the statute of limitations defense is not a jurisdictional bar and it is subject in some circumstances to equitable tolling, a doctrine that neither party discusses.  United States v. Martin, 408 F.3d 1089, 1092 (8th Cir. 2005); Baker v. Norris, 321 F.3d 769, 771 (8th Cir. 2003).  The time limit is subject to equitable tolling when "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time.  Id.  A petitioner seeking equitable tolling must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. Holland v. Florida, 560 U.S. 631, 649 (2010); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). The decision whether to equitably toll AEDPA's limitations period is a fact-intensive inquiry based upon the totality of the circumstances. Holland, 560 U.S. at 649-50.  Equitable tolling represents "an exceedingly narrow window of relief."  Shoemate v. Norris, 390 F.3d 595, 597 (8th Cir. 2004) (quoting Jihad, 267 F.3d at 805).

Here, because neither party discusses equitable tolling, the "fact-intensive" inquiry that the court is required to make is not possible.  The court notes that the Seventh Circuit decided De La Torre in October, 2019, and Mr. Odie filed his § 2255 motion within four months of that opinion being published.  The court cannot say on the face of the current record that Mr. Odie failed to act with the required due diligence.

Based on the record before the court at present, the procedural posture of the government's motion, and the law, the court recommends denial of the government's motion to dismiss on grounds of untimeliness. The court recommends that, after the facts are developed appropriately, the government be allowed to revisit this argument should the government believe such argument is merited by the facts and the law.

**D.    Procedural Default**

The government also argues this court should not reach the merits of Mr. Odie's claim because his claim is procedurally defaulted. As discussed in subsection B of the DISCUSSION section of this opinion (above), generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. Frady, 456 U.S. at 167-68; McNeal, 249 F.3d at 749. When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749.

Mr. Odie filed no direct appeal, so it follows he did not raise his singular § 2255 claim on appeal. That claim, then, is procedurally defaulted. Mr. Odie asserts he is "actually innocent"—not of the federal crime to which he pleaded guilty, but rather "innocent" of facts which were used to enhance his sentence. Reading Mr. Odie's legal argument with the leniency appropriate for a *pro se*

19

litigant, the court understands him to argue that he has a legal excuse for his default:  he did not learn of the opinion in De La Torre until it was decided and he acted quickly to bring the issue to the court's attention.  The court finds Mr. Odie's argument more appropriately analyzed under the cause-and-prejudice standard as explained below.

"Actual innocence" is not a habeas claim in and of itself, rather it is a "gateway" through which an otherwise defaulted claim may be heard on its merits.  Schlup v. Delo, 513 U.S. 298, 315 (1995).  But "actual innocence" means actual factual innocence—i.e. the petitioner is claiming he did not commit the crime of which he stands convicted—it does not mean mere legal insufficiency.  Bousley, 523 U.S. at 623.  Because Mr. Odie is not claiming that he is innocent of the federal crime of which he stands convicted (conspiracy to distribute heroin), nor is he claiming he is innocent of the Illinois state crime which was used to enhance his sentence (possession of a controlled substance), "actual innocence" is inapplicable to his claim.  He is claiming *legal* insufficiency of the enhancement.

Analyzing Mr. Odie's claim, then, under the rubric of cause-and-prejudice, the court first addresses cause.  "Cause" must be something external to the petitioner, something that cannot be attributed to him.  Coleman v. Thompson, 501 U.S. 722, 753 (1991), superseded by statute other grounds, 28 U.S.C. § 2254(b)(2).  Ineffective assistance of trial counsel can under some circumstances establish "cause."  Davila v. Davis, ___ U.S. ___, 137 S. Ct. 2058, 2065 (2017); Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005).

20

Neither party addresses whether trial counsel's failure to ensure Mr. Odie's plea was completed by addressing the § 851(a) information constituted ineffective assistance of counsel.

Also, the Bousley Court stated that a claim the legal basis for which is so novel that it was not available to trial defense counsel may constitute "cause" sufficient to excuse a procedural default. Bousley, 523 U.S. at 622. For example, when a murder defendant was required to carry the burden of proving the absence of malice, a claim that was procedurally defaulted, he was allowed to bring that claim later in habeas because the legal precedent establishing the unconstitutionality of the burden allocation had not yet been decided. Reed v. Ross, 468 U.S. 1, 3, 7-10 (1984). See also Ashker v. Class, 152 F.3d 863, 870-71 (8th Cir. 1998).

The government does not address, nor does Mr. Odie, whether there was any other precedent holding the Illinois statute of Mr. Odie's 2000 conviction did not constitute a "felony drug offense" within the meaning of 21 U.S.C. §§ 802(44) & 841(b). Neither party addresses whether the general line of authority applied in De La Torre was novel, or common. The De La Torre decision itself points back to an earlier Seventh Circuit decision in United States v. Elder, 900 F.3d 491, 501 (7th Cir. 2018), but that decision was not issued until August 15, 2018, which was eight months *after* Mr. Odie had been sentenced. In addition, Elder evaluated whether an *Arizona* state narcotics law was a "felony drug offense" under 21 U.S.C. §§ 802(44) and 841(b). Arizona law

may differ significantly from Illinois law on this point and a decision on the one would not necessarily indicate how the analysis would turn in the other.

On the current procedural posture of this case—a motion to dismiss based on the pleadings alone—the court concludes Mr. Odie has made a *prima facie* showing of "cause."

The court turns now to the "prejudice" prong. Obviously, if Mr. Odie's 2000 Illinois conviction is not a "felony drug offense" within the meaning of 21 U.S.C. §§ 841(b) and 802(44), the government would not have been able to use that conviction to enhance his sentence pursuant to the § 851(a) information that was filed.

The court has reviewed Mr. Odie's PSR to see if, facially, it appears there were other prior drug convictions in Mr. Odie's record that would have allowed the government to premise a § 851(a) conviction on. Mr. Odie had a 1992 and a 1996 conviction, both for delivery of a controlled substance. On the former charge he received a sentence of probation, on the latter a sentence of three years' imprisonment. He also had a 2002 conviction for possession of a controlled substance in 2002 for which he was sentenced to one year. It is not clear whether this offense was a felony or a misdemeanor, given the sentence Mr. Odie received. The Illinois statutes upon which these three convictions rest is also not recited in the PSR. It could be that these convictions are subject to the same fatal flaw as Mr. Odie's 2000 conviction—they may rest upon the same Illinois statute. The court, for purposes of this opinion, reaches the conclusion Mr. Odie has made a *prima facie* showing of prejudice.

The government, banking on its procedural argument, does not address the merits of Mr. Odie's claim. Accordingly, the court does not address that issue at this juncture either.

**E.    Validity of Plea**

Implicit in Mr. Odie's claim, though not clearly articulated, is the assertion that his plea was invalid. He relies on De La Torre, where the defendants argued their pleas were invalid because the convictions used to enhance their sentences were not "felony drug offenses" under federal law. Mr. Odie asserts his situation is identical to the defendants in De La Torre. The court reads Mr. Odie's pleadings as raising the issue of the deficiency of his plea.

The Supreme Court addressed what is necessary to establish the voluntary, knowing and intelligent nature of a plea of guilty to criminal charges in Boykin v. Alabama, 395 U.S. 238 (1969). In that case, Edward Boykin had pleaded guilty to five capital charges of robbery under Alabama law. Id. at 239. At his plea hearing, the judge asked Boykin no questions concerning his plea and Boykin did not otherwise address the court. Id. The Supreme Court reversed, holding that, "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." Id. at 242.

The Court stated that:

A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant

threats might be a perfect cover-up of unconstitutionality.  The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards.

Id. at 242-243.

The Court noted that several federal constitutional rights are involved in a waiver when a defendant pleads guilty:  the privilege against compulsory self-incrimination under the Fifth and Fourteenth Amendments and the right to trial by jury and to confront one's accusers under the Sixth Amendment.  Id. at 243.  The Court held the trial court must ensure that the record on a defendant's waiver of trial rights is "adequate for any review that may be later sought."  Id. at 238.  "[A] defendant's tacit acquiescence in the decision to plead is insufficient to render the plea valid.  Florida v. Nixon, 543 U.S. 175, 187-188 (2004) (citing Boykin, 395 U.S. at 242).  Where the record is insufficient to demonstrate that the defendant knew of the rights he was waiving, the conviction must be reversed, even in the face of overwhelming evidence that the defendant would have pleaded guilty regardless.  United States v. Dominguez Benitez, 542 U.S. 74, 84 n.10 (2004).

The Due Process Clause of the Fifth and Fourteenth Amendments requires that a waiver of a constitutional right be "an intentional relinquishment or abandonment of a known right or privilege."  Boykin, 395 U.S. at 243 n.5 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).  Therefore, if a defendant's plea of guilty is not voluntary and knowing, it is a violation of due process.  Id.; United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006).

Cases subsequent to <u>Boykin</u> have refined what kind of a record must be created in order to sustain the waiver of rights in a plea hearing. For example, the Court has held that, although the record must reflect that the defendant was informed of the elements of the offense to which the defendant is pleading guilty, it is sufficient if defense counsel advises the defendant and the defendant confirms on the record that he has been so advised. <u>See</u> <u>Bradshaw</u> <u>v. Stumpf</u>, 545 U.S. 175, 183 (2005).

In addition, the Court has held that a defendant's plea is voluntarily and intelligently made even if the prosecution has not disclosed material impeachment evidence prior to the plea that it would have otherwise had to disclose if the defendant were insisting upon a trial. <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002). Instead, it is sufficient if the defendant "fully understands the nature of the right [he is waiving] and how it would likely apply *in general* in the circumstances–even though the defendant may not know the *specific detailed* consequences of invoking [the right]." <u>Ruiz</u>, 536 U.S. at 629.

A plea does not become unknowing merely because the defendant discovers after entering his plea that he misapprehended the quality of the government's case against him or "the likely penalties attached to alternative courses of action." <u>United States v. Broce</u>, 488 U.S. 563, 572 (1989). "[A]bsent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested

on a faulty premise." Id. "[A] counseled defendant may not make a collateral attack on a guilty plea on the allegation that he misjudged the admissibility of his confession. 'Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.' " Id. (quoting McMann v. Richardson, 397 U.S. 759, 770 (1970)).  A waiver is knowing and intelligent despite the fact that the defendant may not have been consciously waiving each potential defense relinquished by his guilty plea.  Id. at 573.  A waiver is also knowing and intelligent despite the defendant's ignorance of facts which would have provided a basis for challenging the indictment rendered by the grand jury.  Id. (citing Tollett v. Henderson, 411 U.S. 258, 266 (1973)).

A plea of guilty cannot be attacked as involuntary in a habeas petition because trial counsel erroneously informed the defendant of his parole eligibility date should he plead guilty unless the defendant can show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 56-57 (1985).

"A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their

nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Mabry v. Johnson, 467 U.S. 504, 509 (1984), disapproved of on other grounds in Puckett v. United States, 556 U.S. 129, 138 n. 1 (2009) (quoting from Brady v. United States, 397 U.S. 742, 755 (1970)).

Where a petitioner testified under oath at his plea hearing that he had reviewed the plea agreement with counsel, that he understood counsel, that he was part of a drug conspiracy that distributed a specified quantity of drugs, and that he was pleading guilty of his own free will without threats or coercion, the plea was not involuntary. Campos-Penaloza v. United States, 457 Fed. Appx. 596, 597-98 (8th Cir. 2012) (per curiam) (citing United States v. Gray, 152 F.3d 816, 820 (8th Cir. 1998); and Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997)). This conclusion was buttressed by the fact that petitioner never alleged that any new evidence came to light after his plea and he never requested to withdraw his plea. Campos-Penaloza, 457 Fed. Appx. at 598 (citing United States v. Washington, 198 F.3d 721, 724 (8th Cir. 1999)).

Mr. Odie's case is distinguishable from these cases. Counsel at Mr. Odie's change of plea hearing specifically told the district court his client did not remember the conviction contained in the government's § 851(a) information. See CR Docket No. 181 at p. 14. Counsel informed the court that, because of these questions on Mr. Odie's part, the government had requested documents from the state of Illinois pertaining to the conviction. Id. The court made clear Mr. Odie was not admitting that 2000 Illinois conviction

when it asked:  "He's not ready to admit today, and we can wait until before sentencing?"  Id.

It is not known to this court whether the requested documents were ever provided to Mr. Odie and his counsel.  It is not indicated in the criminal court record.  What is evident, however, is that the subject of Mr. Odie's admission to the § 851(a) information was never revisited on the record.  The court never inquired into it and Mr. Odie never acknowledged his guilt for the conviction nor the applicability of the higher penalty because of the conviction.  In addition, the factual basis statement does not mention the 2000 Illinois conviction, so that statement does not contain an admission by Mr. Odie.  The un-admitted-to § 851(a) information substantially increased Mr. Odie's penalty such that he was subject to a mandatory minimum sentence of 10 years' imprisonment that would otherwise not be applicable to him.  The fact that his sentence currently is set at that 10-year mandatory minimum opens the door to the possibility the district court might have imposed an even lower sentence had the court been free to do so.

Under the facts presented by the pleadings and Mr. Odie's underlying criminal case, the court concludes that Mr. Odie's claim presented in his § 2255 motion is non-frivolous.  The court cannot conclude, pursuant to Rule 12(b)(6) that he cannot possibly state a claim.  Nor can the court conclude that his claim is procedurally unavailable, either due to statute of limitations or failure to file a direct appeal.  In addition, serious reservations about the knowing and intelligent nature of Mr. Odie's plea *as concerns only the § 851(a)*

*information* exist.  The court recommends counsel be appointed for Mr. Odie, allowing a more refined statement of Mr. Odie's claims, and an evidentiary hearing be held to receive evidence regarding the issues outlined in this opinion.

## CONCLUSION

Based on the foregoing facts, law and analysis, the court recommends denying the government's motion to dismiss [Docket No. 13].  The court recommends appointing counsel for Mr. Odie and holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED June 25, 2020.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

29